UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CIVIL ACTION NO. 3:19-CV-00076-GFVT
*Electronically Filed*

ROBERT NIXON,
ROBYN ZINSMEISTER,
JASON HECKER,
KARMEN EXLEY, and
ARTHUR KARRICK
on behalf of themselves                                                                      PLAINTIFFS
and all others similarly situated

vs.                                         **THIRD AMENDED
                                        CLASS ACTION COMPLAINT**

ANTHEM, INC.;                                                                               DEFENDANTS
ANTHEM UM SERVICES, INC.;
ANTHEM HEALTH PLANS OF KENTUCKY, INC.;
ROCKY MOUNTAIN HOSPITAL AND MEDICAL
SERVICES, INC.;

BLUE CROSS BLUE SHIELD OF WISCONSIN;

        Agent for service of process:
        Any officer, or general or managing agent
        N17 W24340 Riverwood Drive
        Waukesha, WI 53188

BLUE CROSS BLUE SHEILD HEALTHCARE
PLAN OF GEORGIA, INC.

        Agent for service of process:
        CT Corporation System
        289 S. Culver Street
        Lawrenceville, GA 30046

and

COMMUNITY INSURANCE COMPANY

        Agent for service of process:
        CT Corporation System
        4400 Easton Commons Way, Ste. 125
        Columbus, OH 43219

** ** ** ** ** ** ** ** ** **

Plaintiffs Robert Nixon, Robyn Zinsmeister, Jason Hecker, Karmen Exley, and Arthur Karrick, on behalf of themselves and all others similarly situated, set forth herein the allegations of their Third Amended Class Action Complaint against Defendants Anthem, Inc., Anthem UM Services, Inc., Anthem Health Plans of Kentucky, Inc., Rocky Mountain Hospital and Medical Services, Inc., Blue Cross Blue Shield of Wisconsin, Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., and Community Insurance Company.

### Introduction

1.    Anthem, Inc. ("Anthem) is one of the largest health benefits companies in the United States in terms of medical membership, serving approximately 40 million members throughs its affiliated companies as of December 31, 2018, according to its Schedule 10-k filings with the Securities and Exchange Commission.

2.    Through its wholly-owned subsidiaries and affiliated companies, including Defendant Anthem UM Services, Inc. ("Anthem UM"), Anthem acts throughout the United States as a full-service company in the business of insuring and administering health insurance and health benefit plans, many of which are employer-sponsored and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  The ERISA-governed health insurance and health benefit plans through which Anthem conducts its business are referred to herein as the "Anthem Plans."

3.    Anthem is a licensee of the Blue Cross Blue Shield ("BCBS") association, through which Anthem conducts business, including insuring and administering the Anthem

Plans in California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia, and Wisconsin.

4. Anthem Health Plans of Kentucky, Inc. ("Anthem KY") is a Kentucky corporation with an office in Louisville, Kentucky. Its agent for service of process is CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601.

5. Rocky Mountain Hospital and Medical Services, Inc. ("Rocky Mountain") is a Colorado corporation with an office in Denver, Colorado. Its agent for service of process is CT Corporation System, 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112-1268.

6. Blue Cross Blue Shield of Wisconsin is a Wisconsin ("BCBS-WI") is a Wisconsin-based insurance company with an office in Waukesha, Wisconsin. It may be served at N17 W24340 Riverwood Drive, Waukesha, WI 53188.

7. Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("BCBS-GA") is a Georgia-based insurance company. It may be served at CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

8. Community Insurance Company ("Community") is an Ohio-based insurance company. It may be served at CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

9. Anthem UM serves as claims administrator for all the Anthem Plans.

10. Anthem KY is a wholly owned subsidiary of Anthem, and Anthem operates Anthem KY in the state of Kentucky as the registered trade name of Anthem Blue Cross and Blue Shield.

3

11. Rocky Mountain is a wholly owned subsidiary of Anthem, and Anthem operates Rocky Mountain in the states of Colorado and Nevada as the registered trade name of Anthem Blue Cross and Blue Shield.

12. BCBS-WI is a wholly owned subsidiary of Anthem, and Anthem operates BCBS-WI is the state of Wisconsin as the registered trade name of Anthem Blue Cross and Blue Shield.

13. BCBS-GA is a wholly owned subsidiary of Anthem, and Anthem operates BCBS-GA is the state of Georgia as the registered trade name of Anthem Blue Cross and Blue Shield.

14. Community is a wholly owned subsidiary of Anthem, and Anthem operates Community in the state of Ohio as the registered trade name of Anthem Blue Cross and Blue Shield.

15. Anthem UM is responsible for deciding whether claims are covered under the Anthem Plans, including both fully-insured and self-insured plans.

16. Anthem and Anthem UM aid each other in the administration of the Anthem Plans, including working together and at each other's direction in the development of coverage guidelines they call "Medical Policies," which are used to make decisions about which claims are approved or denied.

17. Anthem and Anthem UM have acted as ERISA fiduciaries and administrators with respect to the Anthem Plans, including the Plaintiffs' plans.

18. Anthem KY is a claim administrator of Nixon's plan.

19. Rocky Mountain is a claim administrator of Zinsmeister's plan.

20. BCBS-WI is a claim administrator of Hecker's plan.

4

21.   BCBS-GA is a claim administrator of Exley's plan.

22.   Community is a claim administrator of Karrick's plan.

23.   In addition to Anthem KY, Rocky Mountain, BCBS-WI, BCBS-GA, and Community, Anthem operates other subsidiary corporations, which it uses as the registered trade name of Anthem Blue Cross and Blue Shield and through which it operates the Anthem Plans in other states. Anthem uses these other subsidiary corporations to act as claim administrators for Anthem Plans in other states.

24.   Those other subsidiary corporations include in California, Anthem Blue Cross Life and Health Insurance Company, Anthem Blue Cross; in Connecticut, Anthem Health Plans, Inc.; in Georgia, Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.; in Indiana and Ohio, Anthem Insurance Companies, Inc. and Community Insurance Company; in Maine, Anthem Health Plans of Maine, Inc.; in Missouri (excluding 30 counties in the Kansas City area), Anthem Blue Cross and Blue Shield is the trade name of Healthy Alliance Life Insurance Company, RightCHOICE Managed Care, Inc., and Anthem Insurance Companies, Inc.; in New Hampshire, Anthem Health Plans of New Hampshire, Inc.; in New York, Anthem Insurance Companies, Inc. and Anthem Blue Cross; in Virginia, Anthem Health Plans of Virginia, Inc.; and in Wisconsin, Blue Cross Blue Shield of Wisconsin.

25.   This case involves the Defendants' uniform practice of denying coverage for a medical procedure known commonly as minimally invasive sacroiliac joint fusion surgery ("MISIJF") on the basis that it is "investigational and not medically necessary."

26. Defendants have developed and utilized a medical coverage policy called "Sacroiliac Joint Fusion (SURG.00127)," which uniformly, and contrary to medical standards, classifies MISIJF procedures as "investigational and not medically necessary."

27. The products used for MISIJF have been approved by the United States Food and Drug Administration ("FDA"); the procedure is approved for Medicare beneficiaries throughout the United States; it is considered safe and effective by medical societies and associations; and it has been regularly performed by surgeons around the country.

28. Plaintiffs bring this action to redress Defendants' uniform and repeated violations of ERISA resulting from their practice of denying coverage for MISIJF as "investigational" and "not medically necessary." Through uniform development and use of a medical policy on sacroiliac joint fusion, Defendants have erroneously, and contrary to prevailing medical standards, denied all requests for MISIJF.

## Jurisdiction and Venue

29. This action is brought under ERISA, 29 U.S.C. §§ 1132(a), (e), (f), and (g) as it relates to claims for employee benefits under employee welfare benefit plans.

30. This Court has jurisdiction over the Defendants because ERISA allows for nationwide service of process and because each Defendant has minimum contacts within this state and in Franklin County.

31. Under 29 U.S.C. § 1132(e), state courts have concurrent jurisdiction, along with the federal courts, of actions involving claims brought under 29 U.S.C. § 1132(a)(1)(B).

32. Venue is appropriate in this Court because Defendant Anthem UM maintains its registered agent in Franklin County, located at 306 West Main Street, Suite 512,

6

Frankfort, KY 40601 and because jurisdiction and venue are appropriate under 29 U.S.C. § 1132(e)(2).

## Parties

33. Plaintiff Robert Nixon at all relevant times was a participant in and covered by the Catholic Health Initiatives Medical Plan ("CHIMP"), an employee welfare benefit plan under which he is entitled to health care benefits. Nixon resides in the Eastern District of Kentucky.

34. Plaintiff Robyn Zinsmeister was at all relevant times a participant in and covered by a fully-insured Anthem employee welfare benefit plan under which she is entitled to health care benefits. Zinsmeister resides in Colorado.

35. Plaintiff Jason Hecker was at all relevant times a participant in and covered by a fully-insured Anthem employee welfare benefit plan under which he is entitled to health care benefits.

36. Plaintiff Karmen Exley was at all relevant times a participant in and covered by an Anthem employee welfare benefit plan under which she is entitled to health care benefits.

37. Plaintiff Arthur Karrick was at all relevant times a participant in and covered by an Anthem employee welfare benefit plan under which he is entitled to health care benefits.

38. Anthem and Anthem UM are corporations, both of which have their principal place of business in Indianapolis, Indiana. They administer and make benefit determinations related to ERISA health care plans within this district and nationwide.

39. Anthem KY is a Kentucky corporation operating as the registered trade name of Anthem Blue Cross and Blue Shield, through which Anthem conducts business in the state of Kentucky.

40. Rocky Mountain is a Colorado corporation operating as the registered trade name of Anthem Blue Cross and Blue Shield, through which Anthem conducts business in the states of Colorado and Nevada.

41. BCBS-WI is a Wisconsin corporation operating as the registered trade name of Anthem Blue Cross and Blue Shield, through which Anthem conducts business in the state of Wisconsin.

42. BCBS-GA is a Georgia corporation operating as the registered trade name of Anthem Blue Cross and Blue Shield, through which Anthem conducts business in the state of Georgia.

43. Community is an Ohio corporation operating as the registered trade name of Anthem Blue Cross and Blue Shield, through which Anthem conducts business in the state of Ohio.

### Background

44. Plaintiffs and the class members are and/or were covered by health plans, either self-funded or fully insured, administered by Defendants and which provided medical and surgical benefits.

45. Included within the health plans is a provision that excludes coverage for services that are "investigational" and a provision requiring services to be "medically necessary."

46. Plaintiff Nixon was covered under the CHIMP, a self-funded plan administered by Defendants, and which contained definitions for "investigational" and "medically

8

necessary" that are the same, or in all respects substantially similar, to definitions contained in all Anthem Plans.  Anthem KY is a claim administrator of Nixon's plan.

47.   Plaintiff Zinsmeister was covered under a fully-insured Anthem PPO health insurance plan, administered by Defendants, and which contained definitions for "investigational" and "medically necessary" that are the same, or in all respects substantially similar, to definitions contained in all Anthem Plans.  Rocky Mountain is a claim administrator of Zinsmeister's plan.

48.   Plaintiff Hecker was covered under a fully-insured Anthem health insurance plan through his employer, administered by Defendants, and which contained definitions of "investigational" and "medically necessary" that are the same, or in all respects substantially similar, to definitions in all Anthem Plans.  BCBS-WI is a claim administrator of Hecker's plan.

49.   Plaintiff Exley was covered under an Anthem health insurance plan through her spouse's employer, administered by Defendants, and which contained definitions of "investigational" and "medically necessary" that are the same, or in all respects substantially similar, to definitions in all Anthem Plans.  BCBS-GA is a claim administrator of Exley's plan.

50.   Plaintiff Karrick was covered under an Anthm health insurance plan through his employer, administered by Defendants, and which contained definitions of "investigational" and "medically necessary" that are the same, or in all respects substantially similar, to definitions in all Anthem Plans.  Community is a claim administrator of Karrick's plan.

**<u>Minimally Invasive and Percutaneous Sacroiliac Joint Fusion Surgery</u>**

51.    The sacroiliac joints serve as the connection between the spine and pelvis.  These joints are a well-known cause of pain, typically resulting in pain in the low back and buttocks, sometimes with radiation into the groin and/or upper legs.

52.    Non-surgical treatment for sacroiliac joint pain includes pain medications, physical therapy, injections, and ablation.

53.    Surgical treatment for sacroiliac joint pain includes open surgery and MISIJF.  These surgical procedures fuse the sacrum and ilium.

54.    MISIJF involves the use of small incisions under fluoroscopic guidance, generally with the placement of titanium triangular implants, or other methods, to fuse the sacrum and ilium.

55.    MISIJF has substantiated high rates of pain relief and improvement of functional measures, along with low rates of complications.

56.    In November 2008, one of the devices used in MISIJF was granted substantial equivalence section 510(k) approval by the FDA for use in MISIJF.  Similar products have received the same approval since that time.

57.    In 2014, the International Society for the Advancement of Spine Surgery issued a policy statement indicating that MISIJF is a safe and effective procedure for patients with pain due to sacroiliac joint disorders.

58.    In 2015, the National American Spine Society issued a coverage policy statement indicating that MISIJF is indicated for patients with pain due to sacroiliac joint disorders.

59.   In 2015, several Medicare Administrative Contractors issued local coverage determinations that MISIJF is indicated for the treatment of sacroiliac joint pain and would be approved for Medicare beneficiaries.

60.   By June 16, 2016, all Medicare Administrative Contractors (consisting of all 50 states) had removed MISIJF from non-covered services and indicated it would be approved for Medicare beneficiaries.

61.   The Milliman Care Guidelines, evidence-based care guidelines used in the health insurance industry, do not classify MISIJF as investigational and not medically necessary for all indications.

62.   These coverage determinations and policy statements were based, in part, on collective medical studies, articles, and findings indicating that MISIJF was safe and effective for the treatment of sacroiliac joint pain.

63.   Those medical studies, clinical trials, articles, and findings uniformly indicate that MISIJF is safe and effective.  There are no contrary studies.

64.   Additionally, MISIJF is widely recognized in the medical community as safe and effective for treatment of sacroiliac joint pain and is performed at medical facilities throughout the country.

65.   Other health insurance companies operating as licensees of Blue Cross Blue Shield do not classify MISIJF as investigational and not medically necessary for all indications.

66.   Blue Cross Blue Shield licensees in Alaska, Washington, Oregon, Idaho, Montana, Wyoming, Utah, Arizona, New Mexico, North Dakota, South Dakota, Iowa, Nebraska, Kansas, Oklahoma, Texas, Minnesota, Louisiana, Illinois, Mississippi, Tennessee, Alabama, Vermont, Rhode Island, Massachusetts, Pennsylvania, New

Jersey, Delaware, West Virginia, North Carolina, South Carolina, and Florida approve requests for MISIJF and do not consider it categorically to be investigational and not medically necessary.

67. In contrast, Anthem operates as the Blue Cross Blue Shield licensee in the states listed in paragraph 3 above, and categorically denies coverage for MISIJF.

**Defendants' Medical Policy**

68. Defendants Anthem and Anthem UM have developed and implemented Medical Policies that they use to make determinations as to whether medical procedures are investigational and/or medically necessary.

69. Defendants Anthem and Anthem UM, through their Office of Medical Policy & Technology Assessment, "develop[] coverage guidelines and clinical UM guidelines (collectively, 'Medical Policy') for Anthem."[1]

70. The Medical Policies, including SURG.00127, at the direction of Anthem and Anthem UM, are used to make coverage determinations for all Anthem Plans.

71. Anthem UM uses the Medical Policies to administer claims under the Anthem Plans, and those medical policies were developed by Anthem (and/or its affiliates) and Anthem UM for use in making coverage determinations under the Anthem Plans.

72. According to Anthem's website, "Anthem has developed medical policies that serve as one of the sets of guidelines for coverage decisions."[2]

---

[1] https://www11.anthem.com/provider/noapplication/f0/s0/t0/pw_g311588.pdf?refer=ahpprovider&state=nh
[2] https://www.anthem.com/wps/portal/ahpprovider?content_path=provider/ky/f4/s0/t0/pw_006457.htm&label=Anthem%20Medical%20Policies%20and%20Clinical%20UM%20Guidelines&refSource=google&site=fullsite&cnslocale=en_US_ky&state=ky&brand=ABCBS

73.   According to Anthem's website, "The clinical UM guidelines published on this web site represent the clinical UM guidelines currently available to all health plans throughout our enterprise."[3]

74.   According to Anthem's Medical Management – Medical Policy and Clinical Utilization Management Guidelines, "medical policies are implemented by all Anthem Plans."[4]

75.   Anthem and Anthem UM use form definitions of "investigational" and "medically necessary" when making medical policy guidelines that are used uniformly across all Anthem Plans.

76.   Specific to sacroiliac joint fusion surgery, the Defendants have used Medical Policy SURG.00127 to deny requests for MISIJF.

77.   Defendants' own Medical Policy SURG.00127 cites to several articles, clinical trials, medical society coverage positions, and medical findings, all of which support the safety and effectiveness of MISIJF.

78.   Despite this evidence, Medical Policy SURG.00127 nonetheless categorically denied all requests for MISIJF.  It states, "Minimally invasive sacroiliac joint fusion and percutaneous sacroiliac joint fusion procedures are considered **investigational and not medically necessary**." (emphasis in original).

79.   A version of Medical Policy SURG.00127 was used by Defendants during all times relevant to this case, including to the present.

---

[3] Id.
[4] https://www11.anthem.com/provider/noapplication/f0/s0/t0/pw_g311588.pdf?refer=ahpprovider&state=nh

80. On or about December 18, 2019, Anthem and Anthem UM published a "Revised" version of SURG.00127, which purported to allow for MISIJF in certain circumstances.

81. The December 18, 2019, Revised SURG.00127 appeared to allow for approval of MISIJF using some, but not all, guidelines that were similar to those used by Medicare Administrative Contractors. However, in practice, using the Revised SURG.00127, Anthem and Anthem UM continued to categorically deny requests for MISIJF based on criteria that was inconsistent with accepted medical standards, including but not limited to a requirement that the SI joint pain was "subsequent to pelvic girdle trauma."

82. On or about April 15, 2020, Anthem and Anthem UM published another "Revised" version of SURG.00127, which purported to allow for MISIJF in certain circumstances.

83. While the April 15, 2020, Revised SURG.00127 appeared to allow for approval of MISIJF in certain circumstances, however, in practice, using the Revised SURG.00127, Anthem and Anthem UM continued to categorically deny requests for MISIJF based on criteria that was inconsistent with accepted medical standards, including but not limited to a requirement that the "the individual has a history of *pelvic girdle trauma*."

84. Each version of SURG.00127, whether the version that categorically denied all requests for MISIJF or the "Revised" versions requiring pelvic girdle trauma, is inconsistent with medical standards, studies, and articles showing MISIJF as safe and effective, as well as inconsistent with the standards used and applied by Medicare

14

Administrative Contractors, the Milliman Care Guidelines, and other insurers operating as Blue Cross Blue Shield licensees.

85.    Defendants Anthem and Anthem UM use the Milliman Care Guidelines when developing and implementing their own medical policies.

86.    Defendants Anthem and Anthem UM, through the development of their own medical policies for use in all Anthem Plans, have "customized" the Milliman Care Guidelines to remove the clinical indications for MISIJF.

87.    Anthem Plans exclude coverage for services that are "investigational," and that term is defined in a substantially similar manner throughout all Anthem Plans, including the definition in Plaintiffs' plans. Nixon's plan states:

Investigational…means procedures, drugs, devices, services and/or supplies which:
- Are provided or performed in special settings for research purposes or under a controlled environment and which are being studied for safety, efficiency, effectiveness, and/or
- Are awaiting endorsement by the appropriate National Medical Specialty College or federal government agency for general use by the medical community at the time they are rendered to you, and
- Specifically with regard to drugs, combination of drugs and/or devices, are not finally approved by the Food and Drug Administration at the time used or administered to you.

88.    Anthem Plans contain exclusionary language with respect to services that are "investigational," and that exclusionary language is defined in a substantially similar manner throughout all Anthem Plans, including the language in Nixon's plan:

You are not covered for a service, supply, device, or drug that is Investigational, experimental or unproven. A treatment is considered Investigational or experimental when it has progressed to limited human applications but has not achieved recognition as being proven effective in clinical medicine.
To determine Investigational or experimental status, the Claims Administrator may refer to technical criteria established, including whether a service, supply, device, or other drug meets these criteria:
- It has final approval from the appropriate governmental regulatory bodies;

- The scientific evidence must permit conclusions concerning its effect on health outcomes;
- It improves the net health outcome;
- It is as beneficial as any established alternatives; and
- The health improvement is attainable outside the Investigational settings.

89. Plaintiff Zinsmeister's plan defines "Experimental or Investigational" to include:

The drug, biologic, device, diagnostic, product, equipment, procedure, treatment, service or supply:
- Cannot be legally marketed in the United States without the final approval of the Food and Drug Administration (FDA) or any other state or federal regulatory agency, and such final approval has not been granted;
- Has been determined by the FDA to be contraindicated for the specific use;
- Is provided as part of a clinical research protocol or clinical trial (except as noted in the Clinical Trials section under Covered Services in this Booklet as required by state law), or is provided in any other manner that is intended to evaluate the safety, toxicity or efficacy of the drug, biologic, device, diagnostic, product, equipment, procedure, treatment, service or supply; or is subject to review and approval of an Institutional Review Board (IRB) or other body serving a similar function; or
- Is provided pursuant to informed consent documents that describe the drug, biologic, device, diagnostic, product, equipment, procedure, treatment, service or supply as Experimental or Investigational, or otherwise indicate that the safety, toxicity or efficacy of the drug, biologic, device, diagnostic, product, equipment, procedure, treatment, service or supply is under evaluation.

90. Anthem Plans do not cover services that are not "medically necessary," and that term is defined in a substantially similar manner throughout all Anthem Plans, including the definition in Plaintiff Nixon's plan:

A Medically Necessary health care service is one that a Provider, exercising prudent clinical judgment, provides to a patient for the purpose of preventing, evaluating, diagnosing, or treating an Illness, Accidental Injury, disease, or its symptoms, and is:
- Provided in accordance with generally accepted standards of medical practice. Generally accepted standards of medical practice are based on:
  - Credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community; and
  - Physician Specialty Society recommendations and the views of Physicians practicing in the relevant clinical area; and
  - Any other relevant factors; and

16

- Clinically appropriate in terms, type, frequency, extent, site, and duration, and considered effective for the patient's Illness, Accidental Injury, or disease; and
- Not provided primarily for the convenience of the patient, Physician, or other health care Provider.

91. Plaintiff Zinsmeister's plan defines "medically necessary":

Medically Necessary – the diagnosis, evaluation and treatment of a condition, illness, disease or injury that We solely decide to be:
- Medically appropriate for and consistent with your symptoms and proper diagnosis or treatment of your condition, illness, disease, or injury;
- Obtained from a Doctor or Provider;
- Provided in line with medical or professional standards;
- Known to be effective, as proven by scientific evidence, in improving health;
- The most appropriate supply, setting or level of service that can safely be provided to you and which cannot be omitted. It will need to be consistent with recognized professional standards of care. In the case of a Hospital stay, also means that safe and adequate care could not be obtained as an outpatient;
- Cost-effective compared to alternative interventions, including no intervention or the same intervention in an alternative setting. Cost effective does not always mean lowest cost. It does mean that as to the diagnosis or treatment of your illness, injury or disease, the service is: (1) not more costly than an alternative service or sequence of services that is medically appropriate, or (2) the service is performed in the least costly setting that is medically appropriate. For example, we will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis or an infusion or injection of a specialty drug provided in the outpatient department of a hospital if the drug could be provided in a Physician's office or the home setting;
- Not Experimental or Investigational;
- Not primarily for you, your families, or your Provider's convenience; and
- Not otherwise an exclusion under this Booklet.

92. Plaintiff Hecker's health benefit plan contains definitions of "investigational" and "medically necessary" that are similar, and are interpreted similarly by Anthem and Anthem UM, to the definitions in the plans of the other Plaintiffs and proposed class.

93. Plaintiff Exley's health benefit plan contains definitions of "investigational" and "medically necessary" that are similar, and are interpreted similarly by Anthem and Anthem UM, to the definitions in the plans of the other Plaintiffs and proposed class.

17

94. Plaintiff Karrick's health benefit plan contains definitions of "investigational" and "medically necessary" that are similar, and are interpreted similarly by Anthem and Anthem UM, to the definitions in the plans of the other Plaintiffs and proposed class.

95. Defendants Anthem and Anthem UM, pursuant to their internal administration policy guidelines and the Office of Medical Policy & Technology Assessment, develop medical policy guidelines using definitions of investigational and medically necessary that are the same or substantially similar to the definitions contained in the Plaintiffs' plan.

96. Defendants Anthem and Anthem UM use the medical policy guidelines to administer requests for benefits and services under all Anthem Plans, including plans where Anthem KY, Rocky Mountain, BCBS-WI, BCBS-GA, and Community are listed as claim administrators, and including plans in other states where Anthem operates, including those plans and administrators identified in paragraphs 14 and 15

97. Despite the proven safety and efficacy of MISIJF, Defendants Anthem and Anthem UM have categorically denied all requests for benefits related to MISIJF on the basis that it is investigational and not medically necessary under all circumstances, or only medically necessary following "pelvic girdle trauma," under Medical Policy SURG.00127.

98. MISIJF is not investigational under the Plaintiffs' plans or the terms of the Anthem Plans.

99. Anthem and Anthem UM's use of SURG.00127 and its revised versions is contrary to established medical standards, articles, studies and findings all supporting that

18

MISIJF is not investigational and does not require "pelvic girdle trauma" before it is medically necessary.

**Plaintiffs' requests for MISIJF**

100. Plaintiff Nixon suffers from sacroiliac joint pain, with pain in the buttocks and groin.

101. Nixon has treated with Dr. Harry Lockstadt, a board-certified orthopedic surgeon who practices medicine at Bluegrass Orthopaedics in Lexington, Kentucky.

102. Nixon has undergone extensive medical testing and treatment on his low back and sacroiliac joint, including MRI, CT scan, x-rays, diagnostic SI joint blocks, epidural injections, and physical examinations confirming the SI joint as the source of his pain.

103. On July 25, 2018, Dr. Lockstadt recommended that Plaintiff undergo MISIJF.

104. Nixon and Dr. Lockstadt sought authorization from the Defendants for the performance of the MISIJF procedure.

105. On November 9, 2018, Defendants sent a letter denying Nixon's request for coverage and requesting additional information.  The letter stated that the request was "reviewed for your plan by Anthem UM Services, Inc."

106. On December 10, 2018, Defendants sent Nixon another letter denying his appeal with respect to his request for MISIJF.  The letter stated, "Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross and Blue Shield."  The Defendants stated, "[c]overage for the services remains denied because they are considered investigational and not medically necessary."

107. The letter advised that according to Anthem UM, "Medical studies have shown that this procedure works well for treating tumors, infection, or trauma in the area of the

19

sacroiliac joint.  We have seen do not show that this surgery works well to relieve your type of pain.  For this reason, we believe that this surgery is investigational and not medically necessary for you.  We based our decision on health plan medical policy called Sacroiliac Joint Fusion (SURG.00127)."

108.    Nixon appealed this decision, but in response, Defendants sent Nixon a letter dated January 11, 2019, wherein they advised, "Anthem UM Services is a separate company providing utilization review services on behalf of Anthem Blue Cross and Blue Shield."  Anthem upheld its denial of coverage and again alleged, "the services are considered investigational and not medically necessary."

109.    Nixon made additional requests for authorization for MISIJF, but Defendants sent a similar letter denying the request as "investigational" on June 3, 2019.  Defendants stated the request was "reviewed for your plan by Anthem UM Services, Inc."

110.    On September 10, 2019, Defendants sent another letter denying the request for authorization for MISIJF.  The letter stated the request was "reviewed for your plan by Anthem UM Services, Inc." and was denied because it was "investigational."

111.    All these denials relied on Defendants' Medical Policy SURG.00127, which categorically denies requests for MISIJF.

112.    Anthem and Anthem UM have continued to deny Nixon's requests for MISIJF based on Defendants' "Revised" SURG.00127 Medical Policy.

113.    On May 4, 2020, Anthem and Anthem UM denied Nixon's request for MISIJF based on Anthem Revised SURG.00127 Medical Policy.

114.    Plaintiff Zinsmeister suffers from bilateral SI joint dysfunction.

20

115.   Zinsmeister has treated with Dr. Lloyd Mobley, a board-certified neurosurgeon who practices medicine at Rocky Mountain Neurosurgery in Lone Tree, Colorado.

116.   Zinsmeister has undergone extensive medical testing and treatment on her low back and sacroiliac joint, including MRI, physical examinations, diagnostic and therapeutic SI joint blocks, confirming the SI joint as the source of her pain.

117.   Dr. Mobley recommended that Zinsmeister undergo MISIJF.

118.   Zinsmeister and Dr. Mobley sought authorization from the Defendants for the performance of the MISIJF procedure.

119.   Defendants denied the request for MISIJF.

120.   Plaintiff submitted an appeal of Defendants' decision to deny her request for MISIJF. Defendants assigned case number APP-COMM-148773 to the appeal.

121.   By letter dated June 13, 2019, Defendants sent a letter denying Zinsmeister's request with respect to MISIJF.  The letter stated, "Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross and Blue Shield."

122.   Defendants based their denial on Medical Policy SURG.00127.  The letter stated, "Minimally invasive sacroiliac joint fusion and percutaneous sacroiliac joint fusion procedures are considered investigational and not medically necessary."

123.   The letter stated, "based on Medical Policy (SURG.00127) titled Sacroiliac Joint Fusion, the requested surgery is not medically necessary."

124.   Plaintiff Hecker suffers from sacroiliac joint dysfunction.

125.   Hecker has treated with Dr. William Bodemer, a surgeon who practices medicine at Neurospine Center of Wisconsin in Appleton, Wisconsin.

126. Hecker has undergone extensive medical testing and treatment on his low back and sacroiliac joint, including MRI, physical examinations, diagnostic and therapeutic SI joint blocks, confirming the SI joint as the source of his pain.

127. Dr. Bodemer recommended that Hecker undergo MISIJF.

128. Hecker and Dr. Bodemer sought authorization from the Defendants for the performance of the MISIJF procedure.

129. Defendants denied the requests for MISIJF.

130. Plaintiff submitted an appeal of Defendants' decision to deny his request for MISIJF. Defendants assigned case number APP-COMM-423864 to the appeal.

131. By letter dated May 26, 2020, Defendants sent a letter denying Hecker's request with respect to MISIJF.  The letter stated, "Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross and Blue Shield."

132. Defendants based their denial on Medical Policy SURG.00127.  The letter stated, "the request is denied as investigational."

133. The letter stated, "we reviewed this request using the plan medical policy called Sacroiliac Joint Fusion (SURG.00127)."

134. Plaintiff Exley suffers from sacroiliac joint dysfunction.

135. Exley has treated with Dr. Kevin Ammar, a surgeon who practices medicine at Saint Joseph's Hospital in Georgia.

136. Exley has undergone extensive medical testing and treatment on her low back and sacroiliac joint, including MRI, physical examinations, diagnostic and therapeutic SI joint blocks, confirming the SI joint as the source of his pain.

137. Dr. Ammar recommended that Exley undergo MISIJF.

138. Exley and Dr. Ammar sought authorization from the Defendants for the performance of the MISIJF procedure.

139. Defendants denied the requests for MISIJF.

140. Plaintiff submitted an appeal of Defendants' decision to deny her request for MISIJF. Defendants assigned case number APP-COMM-410084 to the appeal.

141. By letter dated May 7, 2020, Defendants sent a letter denying Exley's request with respect to MISIJF.  The letter stated, "Reviewed for your plan by Anthem UM Services, Inc.," and "Anthem UM Services, Inc. is a separate company providing utilization review services on behalf of Anthem Blue Cross and Blue Shield."

142. Defendants based their denial on Medical Policy SURG.00127.  The letter stated, "we believe that this surgery is investigational and not medically necessary for you."

143. The letter stated, "we reviewed this request using the plan medical policy called Sacroiliac Joint Fusion (SURG.00127)."

144. Plaintiff Karrick suffers from sacroiliac joint dysfunction.

145. Karrick has treated with Dr. Brian Steinke, a surgeon who practices medicine at Northwestern Medicine in Illinois.

146. Karrick has undergone extensive medical testing and treatment on his low back and sacroiliac joint, including diagnostic testing, medications, physical examinations, diagnostic and therapeutic SI joint blocks, all confirming the SI joint as the source of his pain.

147. Dr. Steinke recommended that Karrick undergo MISIJF.

148. Karrick and Dr. Steinke sought authorization from the Defendants for the performance of the MISIJF procedure.

149. Defendants denied the requests for MISIJF.

150. Plaintiff submitted an appeal of Defendants' decision to deny her request for MISIJF. Defendants assigned case number APP-COMM-288122 to the appeal.

151. By letter dated April 13, 2020, Defendants denied Karrick's appeal of the decision to deny the request for MISIJF.  The letter stated the claim was reviewed by "Anthem UM Services, Inc."  The letter stated, "[w]e based our decision on the health plan medical policy, Sacroiliac Joint Fusion (SURG.00127H)."

152. Karrick requested an external review of the denial of his appeal.

153. Network Medical Review Company ("NMR") performed an external review of the proposed treatment of MISIJF for Karrick, and on November 19, 2020, issued a "Notice of External Review Determination" finding that Karrick's request for MISIJF was medically necessary and not investigational.

154. NMR stated, "the NMR Orthopaedic Surgery Board Certified Physician has determined and advised your plan carrier that the 27279 – ARTHRODESIS SACROILIAC JOINT PERCUTANEOUS does not constitute experimental or investigative treatment and is medically necessary as such terms are defined in the plan."

155. NMR identified medical literature stating MISIJF is not investigational, and after reviewing Karrick's medical file, concluded, "[t]his procedure is not experimental or investigational."

156. Even though NMR concluded in its external review that Karrick's request for MISIJF was not investigational and was medically necessary, Defendants have still refused to allow Karrick to proceed with the procedure.

157. By letter dated December 14, 2020, Anthem sent Karrick another denial of his request for MISIJF. The letter stated the denial was based on "Health Plan Medical Policy (SURG.00127) titled Sacroiliac Joint Fusion."

## CLASS ACTION ALLEGATIONS

158. Plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein.

159. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, ascertainably, and adequacy of representation.

160. The proposed class that Plaintiffs seek to represent is defined as follows:

> All persons covered under Anthem Plans, governed by ERISA, whether self-funded or fully insured, whose request(s) for minimally invasive sacroiliac joint fusion surgery were denied by Anthem and/or Anthem UM at any time during the applicable limitations period pursuant to Anthem's Medical Policy on Sacroiliac Joint Fusion, SURG.00127, on the bases that the surgery was investigational and/or not medically necessary.

161. Plaintiffs and the class reserve the right to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

162. The members of the proposed class are so numerous that joinder of all members is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs reasonably believe there is a significant number of

individuals covered under the Anthem Plans who have been similarly affected. The names and addresses of the members of the proposed class are readily identifiable through records maintained by the Defendants or from information readily available to the Defendants.

163. The Defendants have acted on grounds generally applicable to the proposed class in that Anthem and Anthem UM serve as claims administrator for the Anthem Plans and base coverage determinations on Medical Policies that it applies to all proposed class members.

164. Common questions of law and fact exists as to all members of the proposed class and predominate over any questions affecting only individual members.

165. Plaintiffs' claims are typical of the claims of all proposed class members, as they are similarly affected by the Defendants' custom and practice of denying all requests for MISIJF based on allegations it is "investigational" or not "medically necessary." Plaintiffs are not different in any material respect from any other member of the proposed class.

166. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and ERISA litigation.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their responsibilities to the proposed class members and will diligently discharge those

duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation.

167. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

168. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

169. Questions of law or fact common to Plaintiffs and the proposed class members predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum,

27

simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members may be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief.  On the other hand, a class action will serve important public interests by permitting consumers harmed by the Defendants' unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct.  The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

170. Class certification is further warranted because Defendants have acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

171.  Plaintiff may seek, in the alternative, certification of an issues class under Fed. R. Civ. P. 23.

## COUNT I –CLARIFICATION AND/OR ENFORCEMENT OF RIGHTS UNDER AN ERISA PLAN BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS: 29 U.S.C. § 1132(a)(1)(B)

172. Plaintiffs and the class members incorporate by reference all preceding paragraphs as if repeated herein.

173. Under 29 U.S.C. § 1132(a)(1)(B), Plaintiffs are entitled to enforce and clarify their rights to the benefits at issue under their plans and the Anthem Plans.

174. As set forth above, Defendants have categorically denied all requests for MISIJF based upon the erroneous position in SURG.00127 alleging that MISIJF is investigational and not medically necessary.

175. Defendants' categorical denials for services based on SURG.00127 are contrary to the established medical and scientific evidence of the safety and efficacy of MISIJF, the FDA 510(k) clearance of the products, the Medicare Administrative Contractors' acceptance of MISIJF as medically indicated and approved for Medicare beneficiaries, and the procedure's general acceptance in the medical community.

176. Because of the Defendants' categorical denials of MISIJF, Defendants failed to adopt or implement any standards or criteria for the approval of the procedures and did not assess the individual eligibility for any person.

177. Plaintiffs and the members of the class have been harmed by Defendants' improper benefit denials because Defendants have adopted, implemented, and used coverage criteria that were inconsistent with the applicable plan terms.

178. As the entities responsible for making coverage determinations and for developing internal practices and procedures for making such determinations, Defendants are ERISA fiduciaries.

179. As ERISA fiduciaries, and pursuant to 29 U.S.C. § 1104(a) and 29 U.S.C. § 1105, Defendants are required to discharge their duties "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries and paying reasonable expenses of administering the plan(s). They must do so with reasonable care, skill, and prudence in accordance with the terms of the plan(s). They must conduct themselves with the fiduciary duty of loyalty.

180. Defendants violated these duties by developing, adopting, and implementing the erroneous SURG.00127 Medical Policies.

29

181.    Plaintiffs and the class have been harmed by the Defendants' breaches of these duties and by the denial of benefits under the Anthem Plans.

182.    On behalf of themselves and the class, Plaintiffs seek a clarification and enforcement of their rights under the plan(s) relating to Defendants' categorical denial of MISIJF as "investigational" and not "medically necessary."

## COUNT II – BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER AN ERISA PLAN BROUGHT ON BEHALF OF PLAINTIFFS AND THE CLASS: 29 U.S.C. § 1132(a)(3)

183.    Plaintiffs and the class members incorporate by reference all preceding paragraphs as if repeated herein.

184.    Defendants have acted as ERISA fiduciaries with respect to the administration of the Anthem Plans and with respect to the determinations to deny coverage for MISIJF.

185.    Defendants have categorically and erroneously denied the Plaintiff's claims and the class members' claims for MISIJF.

186.    Defendants have violated their fiduciary duties under 29 U.S.C. § 1104(a) and 29 U.S.C. § 1105, and have violated 29 U.S.C. § 1133, and its associated regulations under 29 C.F.R. 2560.503-1 by failing to provide adequate reasons for the denial of claims other than through their development, implementation, and use of erroneous Medical Policies SURG.00127.

187.    Under 29 U.S.C. § 1132(a)(3), Plaintiffs and the class seek appropriate declaratory, equitable, and remedial relief as detailed below.

188.    Plaintiffs and the class have been harmed and are likely to continue to be harmed by Defendants' actions.

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and the class,

1. Certification of this action as a class action, appointing Plaintiffs Robert Nixon, Robyn Zinsmeister, Jason Hecker, Karmen Exley, and Arthur Karrick as the representatives of the class and appointing Plaintiffs' attorneys as counsel for the class;

2. An order that MISIJF is not investigational and has been medically necessary under appropriate medical criteria at all times within the applicable limitations period;

3. An order and/or injunction requiring Defendants to reevaluate and reprocess the claims of the Plaintiffs and the class for MISIJF without the erroneous investigational and not medically necessary bases and under appropriate criteria;

4. An order and/or injunction requiring Defendants to provide notice of the reevaluation and reprocessing in a form and manner required by ERISA to all class members who have had requests for MISIJF denied;

5. An order and/or injunction precluding Defendants from relying on other specific reasons or plan provisions not recited in their denial letters;

6. An accounting and disgorgement of any profits made by Defendants from improperly denying the claims;

7. Attorney's fees under 29 U.S.C. § 1132(g), costs, and prejudgment and post judgment interest; and

8. Any other equitable and remedial relief the Court may deem appropriate.

Respectfully submitted,

/s/ *Philip G. Fairbanks*
M. AUSTIN MEHR
PHILIP G. FAIRBANKS
ERIK D. PETERSON
**Mehr, Fairbanks & Peterson**
**Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
pgf@austinmehr.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2021, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

*/s/ Philip G. Fairbanks*
*Counsel for Plaintiffs*