UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ROBERT NIXON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:19-cv-00076-GFVT-EBA |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| ELEVANCE HEALTH, INC., *et al.*, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Two matters stand before the Court: First, the Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, [R. 124]; and Second, Plaintiffs' Motion for Award of Attorney's Fees to Class Counsel and for Service Awards to the Class Representatives. [R. 125]. The parties seek final approval of the class action settlement, which the Court previously preliminarily approved on December 17, 2025. [R. 119]. Plaintiffs also seek attorney fees in the amount of $825,000 and service awards of $17,500 to each of the four class representatives. [R. 125 at 1]. The Defendants do not oppose the final approval of the class action settlement or the request for attorney fees and service awards. For the reasons that follow, the Court **GRANTS** the Plaintiffs' motions.

**I**

The background of this case is well-developed on the Record. *See* [R. 119 at 1–3; R. 124 at 1–9]. Elevance Health previously denied coverage for minimally invasive sacroiliac joint fusion surgery as "investigational" and "not medically necessary" under its prior Medical Policy SURG.000127. [R. 119 at 1]. Elevance later revised its Medical Policy to cover the procedure in certain instances. Plaintiffs filed this lawsuit on October 23, 2019. After nearly two years of litigation, the Court entered a scheduling order on September 30, 2021.

After engaging in discovery, the parties began discussing a possible settlement. The parties filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on March 17, 2025. [R. 114]. On December 17, 2025, the Court preliminarily approved the proposed settlement. [R. 119]. The Court scheduled a final fairness hearing for July 6, 2026. [R. 123]. Before the hearing, Plaintiffs filed their Unopposed Motion for Final Approval of Class Action Settlement [R. 124] and the motion for attorney fees and service awards [R. 125]. The Court addresses these motions in turn.

## II

### A

"The claims of a class proposed to be certified for purposes of settlement may be settled only with the court's approval." *Cooper v. Peoples Bank*, No. 3:23-CV-00389-GNS-RSE, 2026 U.S. Dist. LEXIS 68105, at *4 (W.D. Ky. Mar. 30, 2026) (citing Fed. R. Civ. P. 23(e)). Rule 23 prescribes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement, (2) notice to all affected class members, and (3) a final approval hearing. *Id.* At the first step, the Court considered the Rule 23(e) factors and a separate, but related, seven-factor test used in the Sixth Circuit. Fed. R. Civ. P. 23(e)(2); *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007); *see also* [R. 119]. At step two, after receiving notice, any class member may object to the proposed settlement. Fed. R. Civ. P. 23(e)(5). Step three requires a hearing to take place before the Court approves any class action settlement. Fed. R. Civ. P. 23(e)(2) ("the court may approve [the proposal] only after a hearing[.]").

All three steps occurred in this case. At step one, the Court preliminarily approved the class action settlement on December 17, 2025. [R. 119]. The parties then began the process of notifying individuals covered by the class. [R. 124 at 7–9]. The deadline for class members to

object to the settlement was April 18, 2026. As of June 9, 2026, no class members filed any

objections, nor did any request to be excluded from the settlement. [*Id.* at 9]. Exactly 1,028

potential class members received a Class Notice that was not returned as undeliverable.[1] [*Id.* at

8]. At step three, the Court conducted a final fairness hearing with the parties on July 6, 2026.

Where an unopposed motion for final approval does not contain any objections from

class members, it is unnecessary for the Court to reapply the factors already addressed at the

preliminary approval stage. *See, e.g., Cooper*, 2026 U.S. Dist. LEXIS 68105, at *4–5 (approving

final class settlement and attorneys' fees without new factors analysis). Nevertheless, the Court

will briefly readdress the *UAW* factors while noting that the analysis has not materially changed

since issuing the preliminary approval. *See generally* [R. 119]. In the Sixth Circuit, district courts

consider seven factors in determining whether a class action settlement is fair, reasonable, and

adequate:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*UAW*, 497 F.3d at 631. As set forth below, the settlement clearly meets the standard for final

settlement approval.

There is very little risk of fraud or collusion in this case. The parties engaged in extensive

motions practice over the course of several years, clashing over motions to dismiss, a motion to

---

[1] The parties retained Rust Consulting, Inc., as the settlement administrator. Defendants provided Rust Consulting with a list of settlement class members. Rust Consulting then contacted these individuals. Of the 1,038 mailed notices, 117 returned to Rust Consulting as undeliverable. Rust Consulting took several additional steps to obtain accurate contact information for those 117 initially returned pieces of mail and was able to update nearly all of the "undeliverable" addresses. *See* [R. 124 at 8]; [R. 124-2].

strike class allegations, and extensive discovery before beginning settlement discussions. The extensive history of this case reflects the fact that ERISA litigation is complex, expensive, and time-consuming. *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *16–17 (S.D. Ohio Feb. 18, 2021) ("The complexity inherent in class actions is amplified in ERISA class actions"). Discovery in this case has been exhaustive. The parties exchanged over 20,000 pages of documents, conducted depositions of the named plaintiffs and the corporate defendants' 30(b)(6) representatives, and reviewed internal information regarding the defendants' formulation and adoption of the medical policy at issue. [R. 124 at 19–20].

It is impossible to predict whether plaintiffs would have been successful had they proceeded to trial, but it bears noting that the Court denied the Defendants' motion to dismiss and their motion to strike the class allegations. While this does not necessarily mean that plaintiffs would have been ultimately successful, it is enough to say that the likelihood of success on the merits weighed against the relief obtained by the parties' agreement favors approving the settlement. *McDowell v. Pluto Acquisition Opco, LLC*, No. 23-cv-12827, 2025 U.S. Dist. LEXIS 211252, at *4 (E.D. Mich. Oct. 27, 2025).

The Court further finds that the opinions of class counsel and the class representatives weigh in favor of the settlement. Class counsel is experienced in this type of class action ERISA litigation and characterizes this agreement as one that provides "substantial relief to the Class Members" by achieving "the material relief requested by the Complainants." [R. 124 at 18].

As to the reaction of class members, the Court notes that no class members objected to any part of the settlement. This weighs in favor of approving the settlement. *McDowell*, 2025 U.S. Dist. LEXIS 211252, at *4 ("The absence of any objections . . . is evidence of the Settlement's adequacy"). Finally, the public interest factor weighs in favor of approving this

4

settlement because "there is a strong policy favoring settlement in class actions." *Peck v. Air Evac EMS, Inc.,* Civil Action No. 5:18-615-DCR, 2019 U.S. Dist. LEXIS 118626, at *22 (E.D. Ky. July 17, 2019).

All of the *UAW* factors weigh in favor of approving this class action settlement. Accordingly, the Court **GRANTS** the Unopposed Motion for Final Approval of Class Action Settlement. [R. 124].

**B**

The Court next reviews the Plaintiffs' Motion for Award of Attorney's Fees to Class Counsel and for Service Awards to the Class Representatives. [R. 125]. Plaintiffs estimate the aggregate total monetary value of the settlement at $3,397,750. [R. 125 at 3]. This includes a monetary fund available to members of the class in the amount of $2,502,750, an agreed attorney fee award of $825,000, and an aggregate service award of $70,000. Under the "percentage of the fund" method, described later in this Order, the requested attorney fees of $825,000 constitute 24.3 percent of the total benefits to be made to the Class, paid separately by the Defendants. [*Id.*]

Rule 23(h) permits district courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts encourage parties to negotiate and agree to attorney fee and service awards in class action settlements, describing such agreements as "an ideal toward which the parties should strive." *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *3 (S.D. Ohio Feb. 28, 2008). Fees negotiated and paid separate and apart from the class recovery—as those in this case—are entitled to a presumption of reasonableness. *Id.* (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 323 (W.D. Tex. 2007)).

5

The Sixth Circuit gives district courts discretion to calculate an award of fees by using one of two methods: the "percentage of the fund" approach or the "lodestar" calculation. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993). The "lodestar method better accounts for the amount of **work** done, while the percentage of the fund method more accurately reflects the results achieved." *Id.* at 516. The lodestar method requires courts to "multiply the number of hours 'reasonably expended' on the litigation by a 'reasonable hourly rate.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). Using the percentage of the fund method, on the other hand, simply requires the Court to determine "a percentage of the settlement to award to class counsel." *Id.* In this case, the parties represent that the percentage of the fund method is the more appropriate tool by which to gauge the reasonableness of the attorney's fee and service award payments. [R. 125 at 6].

Above all, attorney's fees and service awards must "be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Courts in the Sixth Circuit consider six factors when determining whether a fee agreement such as this is reasonable:

> (1) the value of the benefit rendered to the plaintiff class;
> (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (3) whether the services were undertaken on a contingency basis;
> (4) the value of the services on an hourly basis;
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of counsel on both sides.

*Bailey*, 2008 U.S. Dist. LEXIS 18838, at *5 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). The Sixth Circuit requires district courts to incorporate this analysis into final rulings and has remanded on appeal where courts simply referred to the parties' joint motion. *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

The Court first evaluates the value of the benefit rendered to the plaintiff class. "Courts in this circuit regard this element as the most important of the *Ramey* factors." *Dick v. Sprint Communs. Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014). "In considering the merits of the case and the risks associated with continued litigation," *id.*, the Court finds that the value of the settlement is substantial. Each eligible class member can receive up to $15,000 to reimburse their out-of-pocket expenses used to pay for the procedure. The cost of continued litigation to the class members was substantial. This action first appeared on the Court's docket in October 2019. Any trial could have taken weeks, and there was no guarantee that plaintiffs would succeed at trial, further delaying or denying benefits to the class. "Moreover, attorneys' fees, costs, expenses, and incentive awards do not diminish class recovery, providing additional value to the class." *Id.* at 299–300. Therefore, the Court finds that this factor supports the agreed attorney fees.

The second factor asks the Court the weigh society's stake in rewarding attorneys who produce benefits such as this in order to maintain an incentive to others. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *Id.* at 301 (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 543 (E.D. Mich. 2003)). Had it not been for the diligence of class counsel, many individual plaintiffs may not have recognized they had actionable rights because of the change in Elevance's coverage policy. Without class counsel willing to take on ERISA challenges such as this, individual claimants may lack the economic resources to litigate their rights. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). This factor, accordingly, weighs in favor of adopting the parties' agreed fee amount.

The third factor asks whether class counsel pursued the litigation on a contingency basis. Courts look with favor upon awarding fee awards to counsel who undertake the litigation on a

contingency basis. *See, e.g., Hodges v. AHS Mgmt. Co.*, Civil Action No. 3:23-cv-1308, 2025 U.S. Dist. LEXIS 66849, at *5–6 (M.D. Tenn. Feb. 26, 2025). Taking such cases on a contingency basis "result[s] in counsel taking the risk of no recovery in the event they did not prevail." *Id.* As such, the substantial risk undertaken by Class Counsel strongly favors the fee requested. *Dick*, 297 F.R.D. at 300.

The fourth factor asks the courts to weigh the value of class counsel's services on an hourly basis. This may be done by performing a crosscheck of requested fees using the lodestar method. *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *22–23 (S.D. Ohio June 30, 2017). But district courts need not perform a crosscheck if the percentage of the fund amount appears reasonable, and courts in the Sixth Circuit routinely note that conducting a lodestar crosscheck is optional and at the court's discretion. *In re Derailment*, No. 4:23CV0242, 2024 U.S. Dist. LEXIS 181361, at *50–51 (N.D. Ohio Sept. 27, 2024) (collecting cases). The Court does not find a crosscheck necessary in this case, particularly where the percentage of the fund amount falls within the acceptable range accepted by this Circuit. *Uselmann v. Pop*, No. 19-13652, 2026 U.S. Dist. LEXIS 79467, at *38 (E.D. Mich. Mar. 27, 2026) (finding that fee awards in complex class actions typically range from 20 to 50 percent, with 30 percent being the "fairly well-accepted ratio").

Next, the Court addresses the complexity of the litigation. ERISA cases, such as this, involve "highly-specialized and complex areas of law" that result in cases which are "expensive to litigate and, if fully litigated, may take years to resolve." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 382 (S.D. Ohio 2006). "Courts within this Circuit and around the country recognize the complexity inherent in class actions is amplified in ERISA class actions." *Hawkins v. Cintas Corp.*, No. 1:19-cv-1062, 2024 U.S. Dist. LEXIS 153614, at *20 (S.D. Ohio Aug. 27,

8

2024) (collecting cases). This case has been on the Court's docket since October of 2019, reflecting the complexity of this *particular* case. This factor weighs strongly in favor of approval.

The final factor asks the Court to consider the professional skill and standing of counsel on both sides. The professional skill and standing of counsel on both sides is substantial. Both plaintiffs' counsel and defense counsel specialize in high-stakes ERISA litigation. [R. 124 at 18–19]. Counsel for both sides have shown themselves to be skilled litigators and advocates of their clients' respective positions. Accordingly, this factor supports approval of the requested fee award.

All of the *Ramey* factors weigh in favor of awarding the requested attorneys' fees. Further, the Plaintiffs seek service awards of $17,500 as a figure intended to compensate each class representative for their efforts in assisting class counsel in prosecuting the case. [R. 125 at 17]. No class members objected to the requested service awards for Plaintiffs. [*Id.*] The service award amount of $17,500 is in line with service awards approved in other class action settlements in the Sixth Circuit. *Back v. Ray Jones Trucking, Inc.*, No. 4:22-CV-00005-GNS-HBB, 2025 U.S. Dist. LEXIS 260735, at *21 (W.D. Ky. Dec. 17, 2025) (finding $20,000 service award to be comparable to other service awards); *Rotondo v. JPMorgan Chase Bank, N.A.*, No. 2:19-cv-2328, 2019 U.S. Dist. LEXIS 201616, at *25 (S.D. Ohio Nov. 20, 2019) (finding $20,000 service award to be appropriate). Plaintiffs' counsel detailed the assistance the plaintiffs provided to class counsel as well as the sacrifices that the plaintiffs made to assist in the litigation. [R. 125 at 18–19]. The Court agrees with the plaintiffs that their efforts were instrumental in obtaining the relief for the class and accordingly will grant their request for a service award.

9

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Plaintiffs' Motions, **[R. 124]** and **[R. 125]**, are **GRANTED**.

2. This Final Order Approving Class Action Settlement and Judgment ("Final Order and Judgment") incorporates and makes part hereof: (a) the Parties' Agreement filed on March 17, 2025, including Exhibits A1 to D thereto [R. 114-1] (collectively the "Agreement" or the "Settlement"); and (b) the Court's findings and conclusions contained in its Order Granting Motion for Preliminary Approval of Class Action Settlement [R. 119] (the "Preliminary Approval Order"). All defined terms in this Final Order and Judgment shall have the same meanings as in the Agreement.

3. All preliminary findings and conclusions in the Court's Preliminary Approval Order are hereby made final.

4. The Court has personal jurisdiction over the Parties and all members of the Settlement Class for purposes of this litigation and approving and enforcing this Settlement. The Court has subject-matter jurisdiction over the claims asserted in this Litigation to approve the Settlement, the Agreement and all exhibits attached thereto. Venue is proper. The Agreement and Settlement are fair, reasonable and adequate, and consistent and in compliance with the applicable provisions of the United States Constitution, its Amendments, and the Federal Rules of Civil Procedure, as to, and in the best interests of, the Settlement Class. The Court also finds that the Settlement resulted from arms-length negotiations and was

concluded only after Plaintiffs and Elevance Health conducted their own investigations and evaluations of the factual and legal issues raised by Plaintiffs' claims, as well as Elevance Health's defenses. No objections have been made to the Settlement by any member of the Class. Accordingly, the Agreement and the Settlement are hereby finally approved.

5. The Court finds that, for the purposes of this Settlement, the requirements of Federal Rule of Civil Procedure 23 are satisfied, and that a class action is an appropriate method for resolving this litigation. All of the requirements for class certification for purposes of settlement only under Rule 23 are present. For purposes of settlement, the Court finds: the members of the Settlement Class are ascertainable and too numerous to by joined; the Settlement Class members' claims present common questions of law and fact; the Settlement Class Representatives' claims are typical of the Settlement Class; the Settlement Class Representatives and Class Counsel will fairly and adequately represent the Settlement Class; questions of law and fact common to the Settlement Class predominate over individual issues; and class certification for settlement purposes is superior to alternate means for adjudicating and resolving the Litigation between Plaintiffs and the Defendants.

6. The Settlement Class, as defined in paragraph 8(b) of the Agreement, is finally certified for settlement purposes only.

7. The Court hereby directs the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions.

8. Pursuant to the Court's Preliminary Approval Order, the notice requirement was satisfied in that the Settlement Administrator sent the Notice to each Settlement Class Member, no later than sixty (60) days after entry of the Preliminary Approval Order, by first-class mail, postage prepaid, to each Settlement Class Member's last known address, and where necessary, further steps were taken in accordance with the Agreement to obtain updated addresses when the mail was returned as undelivered and to re-send the Notice. Settlement Class Members had the opportunity to object to the Settlement and the Agreement, or to exclude themselves from the Settlement Class, and they were informed of the date, time, and location of the Final Approval Hearing and had the opportunity to appear at the Final Approval Hearing. These procedures afforded protections to persons in the Settlement Class and provide the basis for the Court to make an informed decision on approval of the Settlement based on the responses of Class Members.

9. The Notice and all other instruments provided to the Class Members:

   a. constituted the best practicable notice under the circumstances;

   b. constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Litigation, their right to object to or exclude themselves from the proposed Settlement and to appear at the Final Approval Hearing;

   c. was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and

d.  met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, and its Amendments, including the Due Process Clause.

10. Class Counsel and Plaintiffs adequately represented the Class for purposes of entering into and implementing the Settlement.

11. No Class Members have requested exclusion from the Class.

12. Class Counsel are hereby awarded attorneys' fees and costs in the amount of $825,000 ("Class Counsel Payment"). This amount covers any and all claims for attorneys' fees, expenses, and costs incurred by any and all Class Counsel in connection with the Settlement of the Litigation and the administration of such Settlement. Class Counsel Payment shall be provided by Elevance Health to Mehr Fairbanks Trial Lawyers, PLLC in accordance with Paragraphs 19 and 23 of the Agreement. The Court finds that Class Counsel's request for fees in this amount is fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23.

13. As incentive award for participation as the Class Representative in the Action, the Court awards $17,500 to each of the Plaintiffs. Elevance Health shall pay the incentive award in addition to any benefits that Plaintiffs are entitled to receive as Class Members, and in accordance with Paragraphs 21 and 23 of the Agreement.

14. The release of claims set forth in the Agreement in Paragraphs 17 and 18 is incorporated herein and effective as of the date of this Final Order and Judgment, and the Released Parties are hereby forever discharged and released from any claims or liabilities arising from or related to the Released Claims.

13

15. Without affecting the finality of this Final Order and Judgment for purposes of appeal, the Court shall retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Agreement and this Order, and for any other necessary purpose; provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Paragraphs 18, 19, and 20 of this Final Order and Judgment. The Parties submit to the jurisdiction of the Court for purposes of administration, construction, consummation, enforcement, and interpretation of the Agreement and the Settlement.

16. The Agreement is binding on, and has *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and any other Settlement Class Members, as well as their Related Parties, that allege Released Claims, as defined in the Agreement.

17. Neither this Final Order and Judgment, nor the Agreement, nor any other document referred to herein or therein, nor any action taken to carry out this Final Order and Judgment or the Agreement is, may be construed as, or may be used as an admission or concession by or against Elevance Health of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Agreement, and any negotiations or proceedings relating to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Plaintiffs' claims or Elevance Health's denials or defenses, and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other

14

tribunal for any purpose whatsoever, except as evidence of the Settlement or to enforce the provisions of this Final Order and Judgment or the Agreement; provided, however, that this Final Order and Judgment and the Agreement may be filed in any action against or by Elevance Health or Class Members to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim to the extent allowed by law.

18. The Parties are authorized, without further approval from the Court, to agree to and adopt such non-substantive amendments, modifications, or expansions of the Agreement and all exhibits attached thereto that are consistent with this Final Order and Judgment, and do not limit the rights of Settlement Class Members under the Agreement. Any substantive amendments, modifications, or expansions of the Agreement and the exhibits attached thereto shall require prior approval by the Court.

19. Any work product retained by Plaintiffs or Class Counsel that is based on or incorporates information designated as Confidential Material or Highly Confidential Material pursuant to the terms of the Protective Order previously entered in this case and provided by Elevance Health shall be deemed Confidential Material or Highly Confidential Material pursuant to the terms of the Protective Order, and the disclosure or use of such materials shall be subject to the same restrictions applicable to such Designated Material pursuant to the terms of the Protective Order previously entered in this case.

20. In order to protect the continuing jurisdiction of the Court and to protect and effectuate the Court's judgment in this Litigation, the Settlement Class Representatives and all members of the Settlement Class who have not been excluded from the Settlement, and their Related Parties, and anyone acting on their behalf, directly or indirectly, as an individual or collectively, representatively, derivatively, or any other capacity, are forever barred and enjoined from commencing, instituting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Released Parties, except for claims to enforce the Settlement.

21. Section 1715(b) of the Class Action Fairness Act of 2005 requires a settling defendant to "serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official" a specified group of documents describing the settlement. Pursuant to § 1715(d), final approval cannot be issued earlier than 90 days after notice is given under § 1715(b). Elevance Health served the necessary documents upon the appropriate officials on March 27, 2025. This order is signed more than 90 days after Elevance Health served the documents. The Court therefore finds that Elevance Health is in full compliance with the Class Action Fairness Act, 28 U.S.C. § 1715.

22. All claims asserted in this Litigation against the Defendants are hereby **DISMISSED with prejudice**.

23. All claims having been resolved, this matter is **STRICKEN** from the Court's active docket.

24. A judgment will be entered contemporaneously.

This 9th day of July, 2026.

Gregory F. Van Tatenhove
United States District Judge